913 P.2d 669

**STATE of New Mexico,**
**Plaintiff–Appellee,**

v.

**Larry CASAUS, Defendant–Appellant.**

No. 15981.

Court of Appeals of New Mexico.

Jan. 12, 1996.

Tom Udall, Attorney General, Max Shepherd, Asst. Attorney General, Santa Fe, for Plaintiff–Appellee.

Liane E. Kerr, Albuquerque, for Defendant–Appellant.

## OPINION

APODACA, Chief Judge.

1. Defendant Larry Casaus (Defendant) appeals his jury convictions on two counts of criminal sexual contact of a minor in the third degree under NMSA 1978, Section 30–9–13(A) (Repl.Pamp.1994) and one count of kidnapping (no great bodily harm) under NMSA 1978, Section 30–4–1 (Repl. Pamp.1994). He raises six issues on appeal. Under the first five issues, he claims that the trial court erred in (1) denying his motion in limine to exclude allegations of prior criminal sexual behavior between Defendant and the alleged victim; (2) denying Defendant's motion to exclude the testimony of one of the State's expert witnesses; (3) limiting the scope of Defendant's cross-examination of a witness by denying the introduction of extrinsic evidence; (4) allowing a videotape to be played as a prior consistent statement under SCRA 1986, 11–801(D)(1)(b) (Supp. 1995); and (5) denying Defendant's motion for a mistrial after a State's witness referred to Defendant's willingness to take a polygraph examination. Defendant's sixth issue disputes the sufficiency of the evidence. Under the fourth issue, because the prior consistent videotaped statements were not made before the time the improper influence or motive originated, we hold that the videotaped statements were not admissible under SCRA 11–801(D)(1)(b). Consequently, we reverse and remand for a new trial. We address the remaining issues because they may resurface at trial.

## I. FACTUAL AND PROCEDURAL BACKGROUND

2. At the time of the alleged incident, the victim was nine years old. Because her parents were divorced, the victim and her brother, Chris, spent alternating weekends with their father. When their father had to work, the children would be left with Defendant, who was their uncle. Both the victim and Defendant testified that they played a game called "hide the dollar" in which Defendant would hide a dollar bill in a particular room, and, if the victim could find it, she could keep it. The victim testified that she and Defendant also played the "tickle game" in which Defendant would tickle her stomach, arms, neck, and genitals, both over and under her clothing. Defendant denied that they ever played this game.

3. On the day at issue, the victim testified that she went to Defendant's room to play "hide the dollar" and discovered Defendant naked. The victim then testified that Defendant locked all the doors, picked her up and forced her to "move my hands up and down on his private part," and then placed her on the bed where she noticed a wet substance on her face. She also offered testimony indicating that Defendant touched her buttocks and vaginal area, and that he placed his penis inside her rectum. She stated that throughout the alleged incident she tried to get away but "he was holding my hands" and "didn't let me." Defendant denied all allegations and contended that the victim fabricated the entire story because she was angry at him for yelling at her about the fact that she "jammed" a videotape into a VCR and because she wanted more attention from her mother.

4. Before trial, Defendant made several motions in limine, one of which was that any testimony concerning Defendant's alleged prior acts, or more specifically, testimony concerning the "tickle game," be excluded. The motion was denied. Defendant also requested that the testimony of Julia Barker, a family counselor with expertise in the field of child abuse, be excluded because Defendant claimed that she was not qualified to testify and because her testimony would impermissibly comment on the victim's credibility. This too was denied.

5. During the trial, Defendant attempted to ask the victim's brother whether he had made any false allegations in the past that the victim had molested him. The trial court

allowed the questioning but did not allow Defendant to introduce any extrinsic evidence when Chris denied the allegation.

6. Pauline Lucero–Esquibel, a former interviewer for the Children's Safe House that conducts forensic interviewing of children who allegedly have been sexually abused, later testified. In the middle of her testimony, the State attempted to play a videotape depicting an interview that Lucero–Esquibel had conducted with the victim. Defendant, who had objected to the playing of the videotape the day before, renewed his objection. Because Defendant had charged that the victim's testimony was a fabrication, the court allowed the playing of the videotape as a prior consistent statement.

7. Detective Elizabeth Sanchez later testified that she had interviewed Defendant after the alleged crime. The State asked Sanchez if she had asked Defendant whether he would be willing to take a polygraph examination. Sanchez answered affirmatively and stated that Defendant responded that he would be willing to take the examination. Defendant's motion for a mistrial based on the polygraph examination disclosure was denied.

## II. DISCUSSION

8. Because we hold that the videotape should not have been admitted as a prior consistent statement, we address that issue first.

### A. The Videotape
#### 1. Prior Consistent Statements Under SCRA 1986, 11–801(D)(1)(b)

■ 9. A videotape filmed outside of court and offered in court to prove the truth of the matter asserted generally constitutes inadmissible hearsay. *State v. Sandate,* 119 N.M. 235, 239, 889 P.2d 843, 847 (Ct.App. 1994).

10. However, SCRA 11–801(D)(1)(b) states:

A statement is not hearsay if ... [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is ... consistent with the declarant's testi-

mony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive....

■ 11. This rule of evidence is identical to Federal Rule of Evidence 801(d)(1)(B). *See* Fed.R.Evid. 801(d)(1)(B). Before 1995, there was considerable controversy in the federal circuits concerning the interpretation of the federal version of the rule. Some circuits interpreted the rule to mean that only prior consistent statements made before the alleged improper influence or motive originated could be admissible under Rule 801(d)(1)(B). *See, e.g., United States v. Quinto,* 582 F.2d 224, 234 (2d Cir.1978); *United States v. Rodriguez,* 452 F.2d 1146, 1148 (9th Cir.1972). Other circuits interpreted the rule to mean that statements made before the alleged motive were admissible as substantive evidence, but if a prior consistent statement was introduced solely to rehabilitate the witness as to a charge of recent fabrication, it did not matter if the consistent statement was made before or after the alleged motive. *See, e.g., United States v. Harris,* 761 F.2d 394, 399 (7th Cir.1985). Still other circuits imposed no temporal requirement whatsoever and did not distinguish between those prior consistent statements made before or those made after the motive for either substantive or rehabilitative purposes. *See, e.g., United States v. Lawson,* 872 F.2d 179 (6th Cir.), *cert. denied,* 493 U.S. 834, 110 S.Ct. 110, 107 L.Ed.2d 72 (1989); *United States v. Hamilton,* 689 F.2d 1262 (6th Cir.1982), *cert. denied,* 459 U.S. 1117, 103 S.Ct. 753, 754, 74 L.Ed.2d 971 (1983). Earlier this year, the United States Supreme Court settled the issue on the federal level by determining that, under Federal Rule of Evidence 801(d)(1)(B), only those consistent statements made before the motive originated would be admissible. *Tome v. United States,* —— U.S. ——, ——, 115 S.Ct. 696, 700, 130 L.Ed.2d 574 (1995).

12. In 1989, our Court interpreted New Mexico's counterpart to the federal rule. In *State v. Lucero,* 109 N.M. 298, 784 P.2d 1041 (Ct.App.1989), we adopted "the position of those [federal] circuits [that] do not make it an absolute condition of admissibility that the

declarant's statements [be] made prior to the existence of the alleged motive to fabricate." *Id.* at 303, 784 P.2d at 1046. *Lucero* chose "a more flexible position that would permit the trial court to examine the circumstances under which the statement was made and make a determination of the statement's relevancy and probativeness to rebut a charge of recent fabrication or improper influence or motive" and stated that, as long as "there are other indicia of reliability that make the prior consistent statement relevant to rebut a charge of recent fabrication or improper motive, then the fact that the statement was made after the alleged motive to fabricate should not preclude its admissibility." *Id.; see also State v. Altgilbers*, 109 N.M. 453, 457, 786 P.2d 680, 684 (Ct.App.1989), *cert. denied*, 109 N.M. 419, 785 P.2d 1038 (1990). Because we now determine that *Lucero* misinterpreted the language and policy of SCRA 11–801(D)(1)(b), we expressly overrule *Lucero* on this issue and reject any reading of the rule that would allow this "flexible" interpretation. Instead, we interpret the rule as the United States Supreme Court interpreted its federal counterpart in *Tome*.[1]

### a. Language of SCRA 11–801(D)(1)(b)

■ 13. The rule states that a prior consistent statement may be introduced as nonhearsay (i.e., substantive evidence) if the declarant testifies and is subject to cross-examination concerning the statement, the statement is in fact consistent, and the statement is offered to rebut a charge of *recent* fabrication or improper influence or motive. SCRA 11–801(D)(1)(b) (emphasis added). The word "recent" involves a time-line analysis and implies that the charge of fabrication must occur or originate more recently than the statement, or, in other words, that the statement precede the alleged fabrication. *See* Edward D. Ohlbaum, *The Hobgoblin of the Federal Rules of Evidence: An Analysis of Rule 801(d)(1)(B), Prior Consistent Statements and a New Proposal*, 1987 B.Y.U.L.Rev. 231, 246 (1987).

■ 14. We also read "recent" to apply to both "fabrication" and "improper influence or motive." Although the language on its face could be interpreted such that the adjective "recent" only modifies "fabrication" and is separate from "improper influence or motive" (recent fabrication *or* improper influence or motive), we agree with Professor Ohlbaum that the rule's language appears more the result of sloppy draftsmanship than legislative intent. *See id.* ("recent" connotes fabrication resulting from motive that developed after the statement). "Fabricate" is defined as "to make up with intent to deceive." Webster's Third International Dictionary 811 (4th ed. 1976). In other words, there must be a conscious effort to lie, as contrasted to a faulty memory or a mistaken statement. Consequently, if someone makes

---

1. In *Altgilbers*, the defendant was accused of criminal sexual penetration and criminal sexual conduct perpetrated on children under thirteen years of age (his two daughters). He challenged the credibility of his daughters' testimony by suggesting that the mother had induced the children to fabricate their accusations in order to assist her in divorce proceedings. To rebut this contention, the State, under SCRA 11–801(D)(1)(b), offered the testimony of a therapist, who attempted to corroborate earlier testimony regarding the circumstances surrounding the children's first accusations and the mother's reaction to the accusations. Defendant objected to the testimony, contending that the statements to the therapist were not admissible because they did not predate the mother's alleged improper influence. The trial court ruled, and our Court ultimately agreed, that the testimony of the therapist was admissible. Our Court so ruled, relying on *Lucero*, because *Lucero*'s interpretation of SCRA 11–801(D)(1)(b) did not impose a temporal requirement. *Altgilbers* stated, "as this case illustrates, occasionally a statement made after the alleged influence or motive may tend to rebut the allegation." *Id.* at 457, 786 P.2d at 684. However, because of *Lucero*'s interpretation of the rule, which we now overrule, it appears that neither the trial court nor our Court in *Altgilbers* ever deciphered exactly when the alleged improper influence arose. The facts in *Altgilbers* are peculiar, thus making it difficult to determine when, if at all, the children knew of their mother's alleged desire for them to fabricate the sexual abuse. The children's statements to the therapist were made under circumstances making it unclear whether the mother's alleged ulterior motives had influenced the children or whether the mother had even communicated her desire that they implicate the defendant in sexual abuse. Therefore, the statements to the therapist in *Altgilbers* may have been made before any alleged improper influence or motive originated in the minds *of the children* and thus may have been admissible even under today's more narrow interpretation of the rule.

a recent fabrication, it follows that that person must first have an improper intent or motive, or be under some type of influence to choose to do so.[2] By the same token, one cannot have an improper motive or influence without the danger of a fabrication because that would be how the motive or influence is ultimately expressed. We therefore interpret the word "recent" to apply to the entire phrase "fabrication or improper influence or motive." This comports with our earlier conclusion that the use of the word "recent" essentially requires a time-line analysis—to be admissible, the prior consistent statement must occur before the alleged fabrication, improper influence or motive originated.

### b. Purpose and Policy of SCRA 11–801(D)(1)(b)

15. Aside from the language of the rule, we believe logic dictates that the rule be interpreted in this manner. In taking this approach, we examine the underlying purpose and policy of the rule. We first look at the difference between hearsay and nonhearsay evidence and then explore the rationale behind the rule. An out-of-court statement offered for the truth of the matter asserted is deemed hearsay by definition, and, unless a specific exception applies, is inadmissible evidence because of its inherent unreliability—the statement is not made under oath. SCRA 1986, 11–801, –802 (Repl.1994). However, there are certain statements so inherently reliable that the legislature has designated them "nonhearsay," which means that, if admitted, the statements can be used as substantive evidence. *Quinto*, 582 F.2d at 233. Evidence admitted under SCRA 11–801(D)(1)(b) is considered nonhearsay evidence. The drafters, by permitting prior consistent statements to be used to rebut a charge of recent fabrication or improper influence or motive as nonhearsay, do so under the premise that these statements, if made before the improper influence or motive is

alleged to have originated, are inherently reliable. 4 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 406, at 188 (2d ed. 1994) (an impeaching effort that suggests fabrication, influence, or motive makes prior consistent statements relevant only if they were uttered before such corrupting forces came into play); 4 Jack B. Weinstein et al., *Weinstein's Evidence* ¶ 801(d)(1)(b)[01], at 188–89 (1995) ("Evidence that merely shows that the witness said the same thing on other occasions when his motive was the same does not have much probative force, 'for the simple reason that mere repetition does not imply veracity.'") (quoting *United States v. McPartlin*, 595 F.2d 1321, 1351 (7th Cir.), *certs. denied*, 444 U.S. 833, 100 S.Ct. 65, 62 L.Ed.2d 43 (1979)).

16. An example will best illustrate this premise. On Monday, a basketball player tells his father that he was assaulted by his coach. On Tuesday, the coach kicks the boy off the team. On Wednesday, the boy tells the school principal that the coach assaulted him on Monday. Later at trial, on direct examination, the State asks what happened. The boy replies, "Coach hit me." On cross-examination, the defendant elicits testimony that the boy was angry at the coach for being kicked off the team and suggests that is the reason why he accused his coach of assaulting him. The State now wishes to call both the boy's father and the principal to the stand to testify that the boy told them that the coach assaulted him. The statement to the father on Monday, because it was made before any improper motive or influence may have originated, is completely reliable to rebut the accusation of recent fabrication for the very reason that it was made before there was any possible motive to lie. The statement to the principal on Wednesday, however, does nothing to rebut the accusation. It was made after the boy admitted that he was upset at the coach, and therefore by its very nature is unreliable and irrelevant to rebut the charge of fabrication. *See*

---

2. We thus note upon reflection that our dicta in *State v. Vigil*, 103 N.M. 583, 588, 711 P.2d 28, 33 (Ct.App.1985) that "[t]he 'recent fabrication' requirement is satisfied when the credibility of a witness is attacked" (reiterated in *State v. Tafoya*, 105 N.M. 117, 122, 729 P.2d 1371, 1376 (Ct. App.), *cert. denied*, 105 N.M. 94, 728 P.2d 845

(1986), *and cert. granted and judgment vacated*, 487 U.S. 1229, 108 S.Ct. 2890, 101 L.Ed.2d 924 (1988)) is much too broad. Credibility of a witness can be attacked by evidence of mistake or faulty memory, neither of which rise to the level of a conscious influence, intent, or motive.

*Tome,* —— U.S. at ——, 115 S.Ct. at 701 ("The Rule speaks of a party rebutting an alleged motive, not bolstering the veracity of the story told."). Thus, if a prior consistent statement is to be classified as nonhearsay as a result of its reliability, it must be made before the alleged motive to fabricate arises to be admissible under the rule. Michael H. Graham, *Handbook of Federal Evidence* § 801.12, at 752–58 (3d ed. 1991).

17. Additionally, we disagree with the case law rationale that draws a distinction between prior consistent statements that are introduced as substantive evidence and those that are used solely to rehabilitate the witness. If a statement is made after a motive to lie exists, how does that rehabilitate? As Defendant argued to the trial court, "you don't rehabilitate [a witness] with proof that she's lying. You rehabilitate her with proof that she's telling the truth." *See also* Ohlbaum, *supra,* at 289 ("The admissibility of prior consistent statements, without ensuring that the evidence responds directly to a challenged motive to falsify within a certain time frame, has eased the way for the entrance of self-serving declarations [that] are probative of little else than that the witness' motive to fabricate has not changed since his previously, consistently related fable."). In other words, only prior consistent statements that pre-date the improper influence or motive are admissible to rehabilitate.

18. Consequently, we interpret SCRA 11–801(D)(1)(b), as the United States Supreme Court interpreted Federal Rule of Evidence 801(d)(1)(B) in *Tome*—to mean that, if there is a charge of recent fabrication or improper influence or motive, only those statements made before the motive originated are nonhearsay and therefore admissible.

19. We appreciate the potential difficulties this construction creates for trial courts in determining not only whether "improper influence or motive" exists but also when the motive originated. However, we note, as did *Tome,* that before the codification of the rules of evidence, "a majority of common-law courts were performing this task for well over a century." *Tome,* at ——, 115 S.Ct. at 705. We wish to emphasize that our interpretation does not preclude all prior consis-

tent statements if, for example, the witness is simply mistaken or unable to remember his prior statement. *See Sandate,* 119 N.M. at 240, 889 P.2d at 848 (interpreting Federal Rule of Evidence provision as analogous to the New Mexico provision; "Rule 801(d)(1)(B) should apply only when there is some suggestion, if only slight, that the witness *consciously* altered [the] present testimony after making the inconsistent statement by which he has been impeached." (emphasis added)). In these situations, a prior consistent statement can possibly still be admitted under another rule of evidence, providing it is relevant and its probative value outweighs its prejudicial effect. However, if there is a charge of recent fabrication or improper influence or motive, we interpret SCRA 11–801(D)(1)(b) to mean that only those prior consistent statements made before the motive originated are admissible under the rule to rebut that charge.

■ 20. We now apply our holding to this appeal. The State introduced a videotaped interview of the victim (the Safe House videotape) to rebut the charge that she had fabricated the molestation because she was angry at her uncle and wanted more attention from her mother. The court admitted the videotape as a prior consistent statement to rehabilitate the victim's testimony. The motive to lie, however, as raised in Defendant's opening statements, arose two weeks before the videotaped interview. The State, in introducing the videotaped statement, did not indicate otherwise to the trial court. Therefore, under our holding today, because the prior consistent statement (the videotape) did not pre-date the improper influence or motive, it was inadmissible under SCRA 11–801(D)(1)(b).

## 2. Right of Confrontation

■ 21. Defendant relies on *In re Troy P.,* 114 N.M. 525, 842 P.2d 742 (Ct.App.1992), claiming that the admission of the videotape as evidence also violated his right to confrontation. Defendant's reliance is misplaced.

22. The Sixth Amendment to the United States Constitution provides that, in criminal prosecutions, the accused shall have the right

to confront the witnesses against him. *In re Troy P.*, 114 N.M. at 528, 842 P.2d at 745. "This requirement is made applicable to the states through the Fourteenth Amendment to the United States Constitution." *Id.* "The opportunity for cross-examination, rather than the actual cross-examination, is the key to determining whether confrontation rights are satisfied." *Lucero*, 109 N.M. at 304, 784 P.2d at 1047.

23. In *In re Troy P.*, the child was called to the stand for a brief period of time but refused to communicate with the prosecuting attorney. A videotape of the child's statements was played in lieu of the child's testimony, and at the conclusion of the videotape the child was "whisked out of the courtroom without any chance for cross-examination." *In re Troy P.*, 114 N.M. at 527, 842 P.2d at 744. Our Court determined that, because the defendant was never given an opportunity to cross-examine the child, the trial court committed error in ruling that the videotaped statement of the alleged victim was admissible. *Id.* at 529, 842 P.2d at 746.

24. Here, the child was cross-examined about the videotape before it was played. Additionally, after the videotape was played, Defendant cross-examined the interviewer and had the opportunity to renew his request to call the child back to the stand (the court had reserved a ruling on the matter), but chose not to do so. Therefore, because the child and the interviewer were cross-examined about the videotape, and because Defendant made no effort to recall the child to the stand for further questioning, Defendant's right to confrontation here was not infringed by the admissibility of the videotape.

**B. Prior Criminal Sexual Behavior**

25. Defendant argues that the trial court erred in denying his motion to exclude allegations of prior sexual contact between him and the child. There was evidence that, on several occasions in the past, Defendant had initiated a "tickle game" with the alleged victim in which Defendant would touch the child's stomach, neck, and genitals, both over and under her clothes. SCRA 1986, 11–404(B). (Repl.1994) provides that evidence of other crimes, wrongs or acts is not generally admissible to show the character of a person and that he acted in conformity with that character. However, this evidence can be admissible for other purposes, including "proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." SCRA 11–404(B). New Mexico recognizes that this evidence can also be admissible under an exception to the rule where evidence of a defendant's prior sexual conduct with the victim demonstrates a lewd and lascivious disposition toward that victim. *State v. Williams*, 117 N.M. 551, 558, 874 P.2d 12, 19 (1994); *State v. Trujillo*, 119 N.M. 772, 775, 895 P.2d 672, 675 (Ct.App.), *cert. quashed*, 120 N.M. 394, 902 P.2d 76 (1995); *Sandate*, 119 N.M. at 242, 243, 889 P.2d at 850, 851; *State v. Landers*, 115 N.M. 514, 518, 853 P.2d 1270, 1274 (Ct.App. 1992), *cert. quashed*, 115 N.M. 535, 854 P.2d 362 (1993); *State v. Minns*, 80 N.M. 269, 272, 454 P.2d 355, 358 (Ct.App.), *cert. denied*, 80 N.M. 234, 453 P.2d 597 (1969). The trial court may admit evidence under SCRA 11–404(B) and the above-noted exception to the rule if the probative value of the evidence outweighs any prejudicial effect. *Landers*, 115 N.M. at 518, 853 P.2d at 1274. The trial court's decision to admit evidence under this rule is reviewed for abuse of discretion. *Id.*

26. In *Landers*, the defendant objected to the admission as evidence of prior bad acts, including uncharged sexual battery against the victim, in his trial for criminal sexual contact of a minor. Our Court held that, although such evidence would be irrelevant if offered *solely* to demonstrate defendant's lewd and lascivious disposition toward the victim (because conviction for criminal sexual contact of a minor does not require proof of a sexual purpose), because it was offered to corroborate the victim's testimony and place the charge in context so that a seemingly isolated incident would not seem incredible, it was admissible. *Id.* at 518–20, 853 P.2d at 1274–76; *see also State v. Scott*, 113 N.M. 525, 528, 828 P.2d 958, 961 (Ct.App.1991), *cert. quashed*, 113 N.M. 524, 828 P.2d 957 (1992); *State v. Mankiller*, 104 N.M. 461,

469, 722 P.2d 1183, 1191 (Ct.App.), *cert. denied,* 104 N.M. 378, 721 P.2d 1309 (1986).

27. Here, the State attempted to admit evidence of the "tickle game" to show (1) the escalation of conduct, thus attempting to explain how the victim's natural resistance to being touched could have deteriorated, and (2) that the criminal contact at issue here did not occur "in a vacuum." The prior bad acts thus indicated Defendant's lewd and lascivious disposition toward the victim and placed the criminal charge in context. We conclude that the trial court could have reasonably determined that this evidence was critical to the allegation and necessary for ·the jury to assess credibility, and thus that the probative value of the evidence outweighed its prejudicial effect under SCRA 1986, 11-403 (Repl. 1994). Under such circumstances, the trial court did not abuse its discretion. .

### C. Testimony of Julia Barker

■ 28. Julia Barker, a child and family counselor with expertise in child sexual abuse who had evaluated and counseled over one thousand children, testified as an expert in that specialty.· Under *State v. Alberico,* 116 N.M. 156, 166, 861 P.2d 192, `202 (1993), testimony of an expert is admissible under SCRA 1986, 11-702 (Repl.1994) if the expert is qualified, if the expert testimony will assist the trier of fact, and if the expert testifies only to scientific, technical or other specialized knowledge. Admission of expert testimony is within the discretion of the trial court and will not be reversed absent an abuse of that discretion. *Alberico,* 116 N.M. at 169, 861 P.2d at 205.

29. Defendant does not contend that Barker was not qualified as an expert. Instead, he argues that Barker's testimony was inappropriate and prejudicial in three ways: (1) her testimony on the Safe House safeguards was cumulative, (2) her testimony concerning the "tickle game" and "hide the dollar game" was outside her expertise, and (3) her testimony regarding a child's ability to remember events constituted a direct comment on the victim's credibility.

■ 30. Defendant first argues that Barker's testimony concerning the Safe House safeguards improperly bolstered the testimony of Lucero–Esquibel, who conducted the Safe House interviews. We disagree. Barker, who had conducted a training program at Safe House concerning the protocol to be used in evaluating young children, only testified in general terms about the protocol she espoused. Not once did she comment on Lucero–Esquibel's interview or her use or misuse of that protocol. It was not an abuse of the trial court's discretion to conclude that this testimony, based on Barker's knowledge and experience, could assist the jury in understanding how and why certain interview techniques are used.

■ 31. Defendant also argues that, because Barker was an expert in the field of child abuse, she was not qualified to testify concerning potential adult motives behind the "tickle game" and "hide the dollar game." Defendant again misconstrues the testimony. Not once did Barker speculate about any adult motive behind the games, but instead described, based on her own interview of the victim, how she thought the child viewed the games. Because of Barker's expertise in the field of child abuse, we conclude that the trial court did not abuse its discretion in admitting her testimony. *See Shamalon Bird Farm, Ltd. v. United States Fidelity & Guar. Co.,* 111 N.M. 713, 714, 809 P.2d 627, 628 (1991) (trial court has wide discretion to determine whether witness is qualified to testify as expert).

■ 32. Defendant lastly argues that Barker's explanation of how a child remembers an event constituted a direct comment on the victim's credibility. Although Barker testified generally that "most children have fairly good memories for any event that's novel," she never commented specifically on the victim's memory. Barker's general statement, if deemed a comment on the victim's credibility, could only be described as indirect or incidental, which in New Mexico "is not by itself improper." *Alberico,* 116 N.M. at 176, 861 P.2d at 211. We thus determine that all three of Defendant's claims surrounding Barker's testimony are without merit.

## D. Evidence of Character of Witness

33. Defendant claims he was denied an opportunity to properly cross-examine the victim's brother, Chris, on whether he had ever made up a false story that the victim had molested him. The court allowed Defendant to cross-examine the witness about this story, but did not allow any extrinsic evidence. Because SCRA 1986, 11–608(B) (Repl.1994) allows specific instances of the conduct of a witness regarding the credibility of that witness or another witness (if probative of truthfulness or untruthfulness) but does not allow this to be proved by extrinsic evidence, *Scott*, 113 N.M. at 530, 828 P.2d at 963; *Vigil*, 103 N.M. at 589, 711 P.2d at 34, the trial court's limitation on Defendant's cross-examination regarding this alleged fabrication was proper. *See State v. Sanders*, 117 N.M. 452, 459, 872 P.2d 870, 877 (1994) ("The Confrontation Clause merely guarantees an opportunity for effective cross-examination; it does not guarantee that the defense may cross-examine a witness 'in whatever way, and to whatever extent, the defense might wish.'") (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 294, 88 L.Ed.2d 15 (1985) (per curiam)).

## E. Denial of Motion for Mistrial—Polygraph Exam

34. Defendant argues that a State's witness's reference to Defendant's willingness to take a polygraph test warranted a mistrial. The granting or denial of a motion for a mistrial is in the trial court's discretion and will not be disturbed absent an abuse of discretion. *State v. Lucero*, 110 N.M. 50, 51, 791 P.2d 804, 805 (Ct.App.), *cert. denied*, 110 N.M. 44, 791 P.2d 798 (1990). During presentation of its case, the State asked a detective if she had asked Defendant if he would be willing to take a polygraph exam and, if so, what his response to the question had been. Defendant's motion for a mistrial based on these questions was denied. Defendant argues that the trial court erred in not granting the motion. He claims the exchange regarding his willingness to take a polygraph exam prejudiced the jury and constituted an improper comment on his Fifth Amendment right to silence. We disagree.

35. "In New Mexico, the trial court has discretion to admit results of polygraph tests into evidence if certain conditions, designed to ensure the accuracy and reliability of the test results, are met." *Sanders*, 117 N.M. at 459, 872 P.2d at 877; *see also* SCRA 1986, 11–707 (Repl.1994); NMSA 1978, §§ 61–27A–1 to –20 (Repl.Pamp.1993). Here, however, there was no polygraph examination. The State instead elicited from the detective that she had asked Defendant if he would be willing to take a polygraph examination, and he responded that he was willing.

36. Defendant contends that the mere mention of a polygraph exam would cause the jury to speculate, "Well, why didn't the guy take a polygraph?" and wrongfully infer Defendant's guilt. That indeed might have been the case if the State had elicited testimony that Defendant was *not* willing to take a polygraph exam. But here the detective explained that she asked Defendant if he would be willing to take a polygraph examination and he responded that he would be. Not only was that information not prejudicial to Defendant, but it could reasonably have been perceived by the jury to help Defendant's case by making it appear as if he had nothing to hide. *Cf. Donnelly v. DeChristoforo*, 416 U.S. 637, 647, 94 S.Ct. 1868, 1873, 40 L.Ed.2d 431 (1974) ("[A] court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations."). Additionally, Defendant had the opportunity on cross-examination to clarify the issue if he thought the jury might be confused, and he chose not to do so. We therefore hold that the exchange was not improper or prejudicial. *See State v. Hoxsie*, 101 N.M. 7, 10, 677 P.2d 620, 623 (1984) ("In the absence of prejudice, there is no reversible error."), *overruled on other grounds by Gallegos v. Citizens Ins. Agency*, 108 N.M. 722, 731, 779 P.2d 99, 108 (1989).

37. We also believe the comment did not infringe upon Defendant's right to remain silent because he specifically waived

that right before his interview with the detective. *See Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966) ("The defendant may waive ... [his] rights, provided the waiver is made voluntarily, knowingly and intelligently."). For these reasons we conclude that the exchange between the State and the detective regarding Defendant's willingness to take a polygraph examination did not violate Defendant's rights.

**F. Sufficiency of the Evidence**

38. In New Mexico, sufficiency of the evidence is reviewed under the following standard:

> [I]t is "an appellate court's duty on review of a criminal conviction to determine whether *any* rational jury could have found each element of the crime to be established beyond a reasonable doubt." The application of this standard, however, "does not involve substituting the appellate court's judgment for that of the jury in deciding the reasonable-doubt question." The court must still view the evidence in the light most favorable to the State, resolving all conflicts and indulging all permissible inferences in favor of a verdict of conviction, but must "ensure that, indeed, a rational jury *could* have found beyond a reasonable doubt the essential facts required for a conviction."

*State v. Kersey,* 120 N.M. 517, 520, 903 P.2d 828, 831 (1995) (citations omitted).

39. The crime of criminal sexual contact of a minor in the third degree, as charged in counts one and two, required the State to prove beyond a reasonable doubt that: (1) Defendant unlawfully (i.e., done with the intent to arouse or gratify sexual desire, or to intrude upon the bodily integrity or personal safety of the victim) and intentionally touched or applied force to the vulva and/or buttocks of the victim; (2) Defendant unlawfully and intentionally caused the victim to touch the Defendant's penis; (3) the victim was twelve years of age or younger; and (4) these events occurred in New Mexico on a particular date. SCRA 1986, 14–925 (Recomp.1986); *see also* § 30–9–13(A). The crime of kidnapping (no great bodily harm)

required the State to prove beyond a reasonable doubt that: (1) Defendant took or restrained victim by force or deception; (2) Defendant intended to hold the victim for some time against her will; and (3) these events happened in New Mexico on a particular date. SCRA 1986, 14–403 (Recomp.1986); *see also* § 30–4–1.

40. Here, the jury heard direct testimony from the victim describing how Defendant allegedly touched her vulva and buttocks and how he forced her to touch his penis. The victim testified that, several times during the alleged incident, she tried to get away, but Defendant prevented her from doing so. Dr. Renee Ornelas testified that the victim had a labial adhesion that could have been the result of sexual abuse. The State also presented sufficient evidence from which a jury could determine that the victim was under the age of thirteen and that the alleged incident occurred in New Mexico on a particular date. The State thus fulfilled its burden of presenting sufficient evidence, and it was solely the province of the jury to determine the credibility of the child's statements and accusations. *See State v. Lucero,* 116 N.M. 450, 454, 863 P.2d 1071, 1075 (1993).

**III. CONCLUSION**

41. Because the admission of the videotape into evidence as a prior consistent statement under SCRA 11–801(D)(1)(b) was error, we reverse and remand for further proceedings consistent with this opinion. We express no opinion on whether the videotape statements are admissible under any other rule of evidence.

42. **IT IS SO ORDERED.**

BLACK and FLORES, JJ., concur.