2005-NMCA-093

117 P.3d 953

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Peter P. GUTIERREZ, Defendant–
Appellant.**

**No. 23,753.**

Court of Appeals of New Mexico.

May 26, 2005.

Certiorari Granted, No. 29,286,
July 11, 2005.

Patricia A. Madrid, Attorney General, Santa Fe, Max Shepherd, Assistant Attorney General, Albuquerque, for Appellee.

John Bigelow, Chief Public Defender, Trace L. Rabern, Assistant Appellate Defender, Santa Fe, for Appellant.

## OPINION

WECHSLER, J.

{1}   Defendant appeals his convictions for intimidation of a witness, aggravated stalking, criminal damage to property, telephone harassment, and evading and eluding a police officer.   Defendant argues on appeal that his convictions should be reversed because the

prosecutor inappropriately mentioned Defendant's refusal to submit to a polygraph examination during opening statement. Defendant also argues that the district court erred in denying his motion for directed verdict as to the evading and eluding charge. We conclude that the prosecutor improperly commented on Defendant's silence but that the comment was harmless beyond a reasonable doubt. We further conclude that there was sufficient evidence to support Defendant's conviction of evading and eluding. Therefore, we affirm Defendant's convictions.

*Factual and Procedural History*

{2} Police arrested Defendant for allegedly stalking the victim in violation of a domestic violence order. *See* NMSA 1978, § 30–3A–3.1(A)(1) (1997) (defining aggravated stalking as stalking in violation of an order of protection issued by a court). At trial, the State introduced, through the victim, the domestic violence order, which applied to both parties. The victim testified that Defendant stalked her, harassed her with telephone calls, sent letters to her home, placed letters on her car, and continually drove past her home, all in violation of the domestic violence order. The victim testified that she knew Defendant's writing well and recognized his voice on the telephone, because they had dated periodically for approximately five years and had known each other for approximately fifteen to twenty years. The State introduced into evidence four handwritten letters, which the victim identified as written by Defendant. The victim also testified that she had received additional letters from Defendant, which she threw away, and that she called the police whenever she received a letter or telephone call from Defendant. One of the letters included a comment about "signs."

{3} The victim testified that signs started appearing "all over the neighborhood." The State, again using the victim to lay the foundation, admitted into evidence three signs, discovered in her father's yard, which the victim testified were written by Defendant. The signs included derogatory language about the victim, including calling her a "whore" or a "crack whore," and also con-

tained her work and home telephone numbers.

{4} In addition to receiving harassing telephone calls from Defendant at her home and work, the victim testified that she received a telephone call from Defendant while she was staying at a local hotel. The victim stated that when she answered the telephone, Defendant stated: "Hello whore" and then she hung up. When the victim checked out of the hotel, she stated that she found that her vehicle had been scratched or "keyed" during the night. The State introduced photographs depicting the victim's vehicle after the alleged incident. The vehicle was scratched all the way around, with the word "whore" etched into the paint in numerous places. Officer Keith Farkas stated that he did not dust the vehicle for fingerprints and that it was unlikely fingerprints would be found on the signs because they were made out of cardboard. The victim testified that it cost her nearly $3000 to have the vehicle repaired.

{5} The victim stated that the day after her vehicle was damaged she received another telephone call from Defendant while Officer Russell Gould was at her home investigating the case. Officer Gould testified that the victim told him about the signs, telephone calls, and letters and identified Defendant as the perpetrator. While he was documenting the victim's statement, Officer Gould said she received a telephone call. The victim answered the telephone, and promptly handed it to Officer Gould whispering: "It's him." Officer Gould testified that he heard a male voice say: "What do you think about last night?" The victim also stated that she received a telephone call from Defendant while he was in jail stating: "You're dead." However, the PIN number required to make telephone calls from jail belonged to another individual, who was not in jail at that time.

{6} Detective Keith Bessette was assigned to investigate the victim's allegations against Defendant. He stated that the victim identified Defendant as the author of the signs and letters that were admitted into evidence. He stated that no fingerprints were taken from the letters or signs because he suspected they had been handled by too

many people. He also stated that it was impossible for him to get a handwriting expert to match Defendant's writing to that on the signs and letters because his department lacked funding and there were not any state facilities that could do the work. He believed the victim because she was "[o]ne hundred percent" positive that Defendant was responsible for the letters and signs.

{7} Detective Bessette interviewed Defendant, who waived his *Miranda* rights and gave a statement. *See Miranda v. Arizona*, 384 U.S. 436, 479, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Defendant stated that he had not made any telephone calls to the victim and that he "may" have written some letters to her when he was drunk, but had not written the letters at issue. A jury convicted Defendant of intimidation of a witness, aggravated stalking, criminal damage to property, telephone harassment, and evading and eluding a police officer. The remaining facts will be discussed as they pertain to the particular issues on appeal.

*Comment on Defendant's Refusal to Submit to a Polygraph Examination*

■ {8} During the State's opening statement, the prosecutor commented on Defendant's refusal to submit to a polygraph examination. Defendant contends that the comment requires reversal. The parties dispute the standard of review we should apply to this issue. The State argues, relying on *State v. Casaus*, 1996–NMCA–031, ¶ 34, 121 N.M. 481, 913 P.2d 669, that we should apply an abuse of discretion standard because Defendant's motion for mistrial was denied. Defendant argues that a de novo standard of review is proper because the prosecutor's statement infringed on his Fifth Amendment right to remain silent and was prosecutorial misconduct because the statement improperly impugned Defendant's credibility. *See, e.g., State v. Estrada*, 2001–NMCA–034, ¶ 30, 130 N.M. 358, 24 P.3d 793 ("Where the facts are undisputed, we review de novo the legal question whether the prosecutor improperly commented on Defendant's silence.").

{9} This case is distinguishable from *Casaus*. The prosecutor in *Casaus* elicited testimony from a police detective that the defen-

dant had been offered the opportunity to take a polygraph examination and that the defendant had stated that he was willing to do so. *Casaus*, 1996–NMCA–031, ¶ 35, 121 N.M. 481, 913 P.2d 669. We stated that the testimony did not prejudice the defendant because it tended to aid the defendant by giving the jury the impression that his assent to submit to the polygraph examination indicated that he had nothing to hide. *Id.* ¶ 36. In addition, because the defendant had waived his *Miranda* rights prior to being questioned, testimony that he was willing to submit to the test was not an infringement of his rights. *Casaus*, 1996–NMCA–031, ¶ 37, 121 N.M. 481, 913 P.2d 669. However, we indicated that the analysis might have been different if the state had sought to introduce evidence that the defendant had refused a polygraph examination. *Id.* ¶ 36. Therefore, while we generally review a denial of a motion for mistrial for abuse of discretion, the issue presented in this case is whether the prosecutor violated Defendant's constitutional rights with his comment, an issue we review de novo. *See State v. Lopez*, 2000–NMSC–003, ¶ 10, 128 N.M. 410, 993 P.2d 727 (stating that when a defendant alerts the trial court to a constitutional issue with a proper objection, he raises an issue of law, which is reviewed de novo); *see also State v. Sandoval*, 2004–NMCA–046, ¶ 6, 135 N.M. 420, 89 P.3d 92 (stating that constitutional issues are reviewed de novo); *Estrada*, 2001–NMCA–034, ¶ 30, 130 N.M. 358, 24 P.3d 793.

■ {10} During opening statement the prosecutor stated:

> Detective ... Bessette goes, reads the Defendant his rights, asks to talk to him. Defendant says he didn't [make] the signs, make any calls, he might have [written] the letters while he was drunk. More conversation comes out. Detective asks him, "Okay, your side, [do] you want to take a polygraph?" He says, "No."

Defense counsel objected and requested a mistrial, arguing that it was improper for the State to comment on Defendant's refusal to submit to a polygraph examination because the jury could inappropriately interpret his refusal as an acknowledgment of guilt. The prosecutor argued that he should be able to

use Defendant's statement because it was not simply a refusal, but an admission of guilt because Defendant repeatedly stated that he would fail the polygraph examination. The district court sustained Defendant's objection and instructed the jury not to consider anything relating to a polygraph examination or to speculate as to what Defendant's responses might have been. It did not grant Defendant's request for a mistrial.

■ {11} A district court has discretion to admit polygraph examination results as evidence so long as "certain conditions, designed to ensure the accuracy and reliability of the test results, are met." *State v. Sanders*, 117 N.M. 452, 459, 872 P.2d 870, 877 (1994); *see also* Rule 11–707(C) NMRA. However, the issue of whether a prosecutor may comment on a defendant's refusal to submit to a polygraph examination is an issue of first impression. *But see Casaus*, 1996–NMCA–031, ¶ 36, 121 N.M. 481, 913 P.2d 669. We therefore turn to the federal courts and our sister states in search of persuasive authority. *Cf. Sundial Press v. City of Albuquerque*, 114 N.M. 236, 239, 836 P.2d 1257, 1260 (Ct.App.1992) ("The reasoning of federal decisions . . ., if not in conflict with controlling New Mexico authority, can be persuasive. However, we are not bound by these federal decisions. They must be of sound logic and based on policies compatible with the law of this state.") (citation omitted).

{12} Numerous federal courts have stated that it is improper to comment on a defendant's refusal to submit to a polygraph examination. *See United States v. Walton*, 908 F.2d 1289, 1294 (6th Cir.1990) (stating that a reference to a defendant's failing or refusing the polygraph examination would be improper because it would implicate "rights of a constitutional magnitude"); *United States v. Kiszewski*, 877 F.2d 210, 216–17 (2d Cir.1989) (analyzing the prejudice of a reference to a statement made by a state witness detailing a defendant's refusal to submit to a polygraph examination and determining that the error in admitting the testimony was harmless); *United States v. Stackpole*, 811 F.2d 689, 694–95 (1st Cir. 1987) (stating that it was error for the trial court to admit a tape-recorded statement by

the defendant that included his refusal to submit to a lie detector test, but finding the error harmless); *United States v. Murray*, 784 F.2d 188, 188–89 (6th Cir.1986) (stating that a deliberately introduced comment by an experienced FBI agent that the defendant refused a polygraph examination required reversal when the proof of guilt was not overwhelming); *Bowen v. Eyman*, 324 F.Supp. 339, 341–42 (D.Ariz.1970) (stating that testimony concerning the defendant's refusal to take a polygraph examination was "constitutionally impermissible" because of the "highly prejudicial effect" of the testimony). In addition, several state courts have also held that it is improper to admit evidence of a defendant's refusal to submit to a polygraph examination. *See Melvin v. State*, 606 A.2d 69, 72 (Del.1992) (holding that a trial judge's reliance on the defendant's refusal to submit to a polygraph examination violated the defendant's constitutional rights); *State v. Emory*, 190 Kan. 406, 375 P.2d 585, 588 (1962) (stating that admission of evidence that the defendant refused a polygraph examination was improper because it deprived the defendant of his alibi defense); *State v. Driver*, 38 N.J. 255, 183 A.2d 655, 658 (1962) (stating that a prosecutor's references to a defendant's refusal to submit to a polygraph examination were improper because the defendant's refusal could improperly be regarded by the jury as indicating a consciousness of guilt); *Kugler v. State*, 902 S.W.2d 594, 597 (Tex.Ct.App.1995) (holding that the defendant's refusal to submit to a polygraph examination could lead the jury to improperly infer that the defendant had something to hide when the complainant was the only witness who could identify the defendant as her attacker).

{13} The State contends, again relying on *Casaus*, that the prosecutor's reference to Defendant's refusal to submit to a polygraph examination did not violate his rights under the Fifth Amendment because he waived his *Miranda* rights prior to giving an exculpatory statement to Detective Bessette. *See Casaus*, 1996–NMCA–031, ¶ 37, 121 N.M. 481, 913 P.2d 669. However, as the State acknowledges, we indicated in *Casaus* that a defendant could be prejudiced by a prosecutor's reference to his refusal to submit to a

polygraph examination. *Id.* ¶ 36. In addition, we have also stated that a defendant may exercise the right to remain silent, "even if that right is not initially asserted." *State v. Hennessy,* 114 N.M. 283, 288, 837 P.2d 1366, 1371 (Ct.App.1992), *overruled on other grounds by State v. Lucero,* 116 N.M. 450, 453–54, 863 P.2d 1071, 1074–75 (1993). Defendant's refusal to submit to a polygraph examination was effectively a statement of a desire to remain silent and therefore not subject to comment by the prosecution. *See Wainwright v. Greenfield,* 474 U.S. 284, 295 n. 13, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986) ("With respect to post-*Miranda* warnings 'silence,' we point out that silence does not mean only muteness; it includes the statement of a desire to remain silent[.]").

{14} But, this determination alone does not end our inquiry. As recently stated by our Supreme Court in *State v. Alvarez–Lopez,* 2004–NMSC–030, 136 N.M. 309, 98 P.3d 699, and *State v. Johnson,* 2004–NMSC–029, 136 N.M. 348, 98 P.3d 998, we must determine whether a federal constitutional error was harmless beyond a reasonable doubt. To make this determination, we consider the entire record to ascertain whether "there is a reasonable possibility that the [error] might have contributed to the conviction." *Alvarez–Lopez,* 2004–NMSC–030, ¶ 25, 136 N.M. 309, 98 P.3d 699 (internal quotation marks and citation omitted); *see also United States v. Hasting,* 461 U.S. 499, 509, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983). Our harmless error analysis does not exclusively focus on whether the record contains overwhelming evidence of Defendant's guilt. *See Alvarez–Lopez,* 2004–NMSC–030, ¶ 30, 136 N.M. 309, 98 P.3d 699. Instead, we are to affirm Defendant's conviction only if the State establishes "beyond a reasonable doubt that the jury verdict was not tainted by the constitutional error." *Id.* This harmless error standard applies in this context because "even if conviction *appears* inevitable, there is a point at which an error becomes too great to condone as a matter of constitutional integrity and prosecutorial deterrence." *Id.* ¶ 31 (internal quotation marks and citation omitted).

{15} The State argues that this error should be deemed harmless because Defendant's objection was sustained, and the court gave a curative instruction. *See State v. Gonzales,* 2000–NMSC–028, ¶ 37, 129 N.M. 556, 11 P.3d 131 (stating the general rule that "[t]he overwhelming New Mexico case law states that the prompt sustaining of [an] objection and an admonition to disregard the answer cures any prejudicial effect of inadmissible testimony") (internal quotation marks and citation omitted). We do not apply that general rule in this case for two reasons. First, the State concedes that the prosecutor's conduct was "obviously intentional." *See id.* ¶ 39 (stating that when the prosecutor's conduct was intentional in eliciting improper testimony, the proper analysis is to review whether there was a "reasonable probability that the improperly admitted evidence could have induced the jury's verdict" even if the trial court admonished the jury). Second, as we have already stated, when analyzing for harmless error beyond a reasonable doubt, we must consider the entire record. *See Hasting,* 461 U.S. at 509, 103 S.Ct. 1974 ("[This] Court has consistently made clear that it is the duty of a reviewing court to consider the trial record as a whole and to ignore errors that are harmless, including most constitutional violations[.]"); *see also Bowen,* 324 F.Supp. at 342 (reviewing for harmless error beyond a reasonable doubt despite an instruction to the jury to ignore polygraph testimony by the court); *Murray,* 784 F.2d at 188–89 (same); *Kugler,* 902 S.W.2d at 596–97 (reviewing for harmless error despite curative instruction). We therefore cannot rely on the curative instruction and review the entire record for harmless error.

{16} In doing so, our review convinces us that the prosecutor's comment was harmless beyond a reasonable doubt because the comment could not have reasonably induced the jury's verdict. We agree with Defendant that much of the evidence in this case hinged upon the victim's credibility and, conversely, the jury's disbelief of Defendant's assertion of innocence. With regard to the charges of intimidation of a witness, aggravated stalking, criminal damage to property, and telephone harassment, it was the victim's

testimony that identified Defendant as the author of the letters and signs and as the individual who damaged her vehicle. It was also the victim's testimony that identified Defendant as the caller who had been harassing her at her work and home, and even from jail. But, this case is not one in which "the evidence merely amounts to the complainant's word against the [defendant's]" as Defendant argues. The State introduced other evidence at trial that the jury could consider in determining whether to believe Defendant's assertions of innocence. Detective Bessette testified that after interviewing Defendant, he informed Defendant that he was being charged and served Defendant with a warrant. In response to Defendant's "smug" look, Detective Bessette stated: "Yeah, yeah, I know you didn't do it[,]" to which Defendant responded: "I never said I didn't do it." The jury also heard testimony from Officer Gould that Defendant fled when Officer Gould attempted to question him about the victim's allegations. The jury was free to infer a consciousness of guilt from Defendant's flight. *See State v. Jacobs*, 2000–NMSC–026, ¶ 15, 129 N.M. 448, 10 P.3d 127 (recognizing that evidence of flight can show a consciousness of guilt).

{17} Given the entirety of the evidence, the State has met its burden of demonstrating that the prosecutor's error was harmless beyond a reasonable doubt. *See Alvarez–Lopez*, 2004–NMSC–030, ¶ 25, 136 N.M. 309, 98 P.3d 699. However, we take this opportunity to repeat our admonition that prosecutors who inject impermissible comments which affect a defendant's constitutional rights risk reversal by this Court of convictions secured by such tactics. *Hennessy*, 114 N.M. at 289, 837 P.2d at 1372; *see also Driver*, 183 A.2d at 661 ("All too frequently this court is compelled to reverse judgments of guilt in important criminal cases because of overzealous prosecution. It is the duty of prosecuting officers to guard against the introduction of incompetent evidence.") (internal quotation marks and citation omitted).

*Defendant's Motion for Directed Verdict for Evading and Eluding*

{18} Defendant also argues that the district court erred in denying his motion for directed verdict with regard to the evading and eluding charge. Defendant essentially contends that there was insufficient evidence to support his conviction for evading and eluding because Officer Gould never informed Defendant that he had legal authority to detain him and because Defendant had no legal obligation to speak with Officer Gould. We disagree.

{19} A motion for directed verdict is a motion that questions whether there is substantial evidence to support the charge. *State v. Dominquez*, 115 N.M. 445, 455, 853 P.2d 147, 157 (Ct.App.1993). Substantial evidence is evidence, either direct or circumstantial, "that is acceptable to a reasonable mind as adequate support for a conclusion." *Id.* "We view the evidence in the light most favorable to the state, resolving all conflicts in the evidence and indulging all permissible inferences to be drawn from it in favor of the verdict." *Id.* We do not reweigh the evidence, nor do we substitute our judgment for that of the jury. *Id.*

{20} In order to convict Defendant of evading and eluding a police officer, the State had the burden of proving that: (1) Officer Gould was a peace officer engaged in the lawful discharge of his duty; and (2) Defendant, with knowledge that Officer Gould was attempting to apprehend or arrest him, fled, attempted to evade, or evaded Officer Gould. *See* UJI 14–2215 NMRA; NMSA 1978, § 30–22–1(B) (1981). Officer Gould was looking for Defendant because the victim had called the police alleging that Defendant had driven by her home in violation of the domestic violence order. The victim gave Officer Gould both a description of Defendant and of the truck he was driving. The State introduced evidence at trial that Officer Gould was on duty, wearing his uniform, and driving a marked police car, when he made initial contact with Defendant. Defendant exited his truck and approached a house. Officer Gould testified that he asked Defendant to stop and informed Defendant that he needed to talk to him. Defendant responded by saying: "I've gotta use the bathroom" and entered the house. Officer Gould followed

**154**

Defendant into the house and, as he entered, noticed that Defendant had not gone to the bathroom. Instead, Defendant had proceeded through the house and out the back door. Officer Gould testified that as he emerged from the back door from which Defendant had just exited, Defendant looked at him and jumped over the backyard fence. Officer Wyck, who had arrived just after Defendant entered the home, was on the other side of the fence awaiting Defendant. Officers Wyck and Gould apprehended Defendant after a struggle.

{21} Contrary to Defendant's assertion, Officer Gould had the authority to briefly detain Defendant in order to determine whether Defendant was the man who had harassed and stalked the victim. *See State v. Eli L.*, 1997–NMCA–109, ¶ 8, 124 N.M. 205, 947 P.2d 162 (stating that a police officer may detain a person if the officer has "reasonable and articulable suspicion that the person stopped is or has been involved in criminal activity") (internal quotation marks and citation omitted). In addition, as we have already stated, the jury was free to infer that Defendant had knowledge that Officer Gould was attempting to arrest or apprehend him from Defendant's flight through the house, out the back door, and over the fence. *See State v. Gee*, 2004–NMCA–042, ¶ 24, 135 N.M. 408, 89 P.3d 80 (stating that intent can be inferred from circumstantial evidence); *see also Jacobs*, 2000–NMSC–026, ¶ 15, 129 N.M. 448, 10 P.3d 127. Substantial evidence supported the charge and the district court did not err in denying Defendant's motion for directed verdict.

*Conclusion*

{22} The prosecutor committed error when he inappropriately mentioned Defendant's refusal to submit to a polygraph examination during his opening statement. However, because the error is harmless beyond a reasonable doubt, we affirm Defendant's convictions for intimidation of a witness, aggravated stalking, criminal damage to property, and telephone harassment. We also affirm

Defendant's conviction for evading and eluding.

{23} **IT IS SO ORDERED.**

CASTILLO and KENNEDY, JJ., concur.